Let's hear from counsel for Barry. Good afternoon and may it please the court. My name is Natalie Ramsey appearing from Robinson and Cole for Appellant Linda Barry. We are here today on the appeal of Mrs. Barry from the orders of the Bankruptcy and District Courts in joining her asbestos claims against Graphic Packaging. This appeal presents two important issues. The first is why the court should find, based on its prior decision and voters' liquidation, that Mrs. Barry's estate holds a post-petition claim against Graphic and should be permitted to pursue that claim in Louisiana in connection with the bar date and subsequent alleged discharge of her claims in the Manville Forest products bankruptcy case. I would like to briefly address each of these issues and answer any questions the court may have. As you are aware, and the clock reflects, I have reserved three minutes for rebuttal. Why don't you begin by addressing the arrival of the letter dated April 17, 2021, noting that Mrs. Barry died on April 12, 2021. Yes, your honor. We learned of Mrs. Barry's death with the arrival of that letter, for which we apologize. We had confirmed that Mrs. Barry was alive and in relatively good health given her terminal illness at the time of initial appeal. We have been in touch with her Louisiana trial counsel throughout, including at the time of the reply brief, but we did not check in at that time on her health. We have been informed now by her Louisiana trial counsel that it is working with the family to have a personal representative appointed, that the process in West Monroe is delayed because of the pandemic, but that probate will be finalized as quickly as possible. As soon as a personal representative is appointed, we will promptly follow rule 43A motion. Ms. Ramsey, I have a preliminary question for you. Ms. Barry and her Louisiana counsel pursued a claim against a number of tort feasors in Louisiana state court, did she not? She did, yeah. And was that on a claim of mesothelioma as a result of exposure to the asbestos that came off her husband's work clothes on a daily basis? That is correct, your honor. And so her claim was for all of the injuries that she received as a result of the exposure of the mesothelioma? That's correct. Or to the asbestos. To the asbestos exposure, that's correct. And prior to verdict, she settled with Olin for a sum of money, $2.25 million? I believe that is correct, your honor. And has that been paid? I'm sorry, your honor, I don't believe that is correct. I believe there was a settlement, but I think the amount was incorrect. All right, I apologize. Did she settle, but Foster Wheeler, she got a judgment against Foster Wheeler, the verdict was $4.5 million? That's correct. And Foster Wheeler was directed to pay $2.25 million? That's correct. Okay, which would be its virile share? Its virile share. Okay, and has that sum been paid? My understanding is that has been paid, your honor. How then does she have standing to pursue against anyone else since she's obtained a judgment? The full and she can't pursue against any other virile share or any other tort fees or since she's received recovery on all for all of her injuries? Your honor, she has not received full compensation for the full amount she was awarded at judgment. She has received the payment from Foster Wheeler and she has received some settlement from Olin. There are additional sums that are still outstanding from which she could seek a viral share. But in any event... Was there an apportionment? I'm sorry, I go ahead. I apologize. No, that's okay. In any event, the fact that she is now deceased provides her under Louisiana law, a new state with a new and separate claim for wrongful death. So any question regarding whether she could continue to pursue a claim against graphic is now no longer an issue at all. Their wrongful death claims not before us, it would be a separately asserted claim, would it not? It would, your honor, but the same rules presumably would apply the same position that has been taken with respect to her personal injury claim we assume would be taken by the defendants. Okay, I see. All right. Okay. Thank you. So our position is pretty simple. We really boils down to the fact that the Motors liquidation decision, which was issued before the district court's decision is controlling and supports Mrs. Berry's position. Under Motors liquidation, she has two separate claims, like the plaintiff suing New GM and Motors. She has a category three claim against graphic. That was Newton. The Motors liquidation claim was because New GM continued to use GM cars for which there was a defective product and failed to warrant, right? That's correct, your honor. Is her claim against graphic a failure? Is there a failure to remediate cause of action under Louisiana law? There is a negligence claim of action under Louisiana law because graphic had a duty. It had knowledge of the harm, and it failed to protect Mr. Berry from exposure to asbestos. That is a premises liability claim that would arise under Louisiana law that is against graphic for its post-bankruptcy misconduct. But curiously, Mr. Berry filed a claim against the Manville Trust. That is actually not relevant in the sense of that was a different kind of claim. You're right, but it's curious. That was a product claim. That was for exposure to that she's being enjoined from pursuing as a premises liability claim, sounding a negligence against the owner of the premises where he worked. So they're distinct claims. When I say it's irrelevant for this, what I really mean is it's a different type of claim. It was for a different type of exposure and a different type of liability. Therefore, her claim against graphic, we think, falls squarely within category three. It was post-bankruptcy misconduct and an alleged post-bankruptcy harm. That is distinct from what she also has, which is a category two claim under the GM decision that was liquidation decision, which is against Manville Forest products for its pre-bankruptcy misconduct. The court below treated that as one claim, but motorist liquidation makes clear. There are two claims and that only makes sense when you're talking about two different time periods with two different sources of misconduct, which is what we have here. All right. Thank you. Thanks very much. You've reserved some time. I have. Thank you, Your Honor. Thank you. All right. We'll hear from opposing counsel. Good afternoon, Your Honors. Jim McClamy of Davis Pulten Wardwell on behalf of Propel and Graphic Packaging. Are Your Honors able to hear me all right? Yes. Thank you, Your Honors. In response to the arguments that have just been raised by appellants, I think it's important to focus on a couple of key issues. First is that it's undisputed in the evidence that Ms. Berry's exposure to asbestos first occurred prior to the bankruptcy. As the district court noted in its decision at page 13, that was definitely the case. And as the trial court noted and ruled, in fact, in the trial that Ms. Berry had in Louisiana, most of Ms. Berry's exposure occurred before 1980, two years in advance of the Chapter 11 filing. And as both the bankruptcy court and the district court noted, the asbestos cases really do provide a really distinct and unique situation in where you're looking at when did the bankruptcy claim, whether a bankruptcy claim arose, and was it all pre-petition? You look to the time of first exposure. And the fact is, as noted by the district court and the bankruptcy court in Colby-Silatex, as the Louisiana Supreme Court found, there's really no way to separate those two out. And it is for that reason that we find that this case is very much different than the GM case of Motors liquidation that the Second Squarely within the first two categories of cases that were found to be pre-petition claims properly addressed by the bankruptcy there. For example, if your honors were to look at 829 F3rd 135 in Motors liquidation, you'll see there are four categories essentially set out. One pre-closing accident claims, economic loss claims arising from the defects based on the pre-petition conduct, then independent claims relating only to new GM's conduct, and then four claims from the used car purchasers. Here, we do not have a situation where we have a separation where Ms. Berry's claims would arise only from the conduct that is alleged to have taken place post-petition. And indeed, it's impossible to separate out the pre-petition and the post-petition causation, as both the district court and the bankruptcy court noted. And for those reasons, we believe Ms. Berry's claim falls squarely within the manville forest products confirmations orders discharge and injunction, and then also are properly channeled to the trust. The reason why I think it's important that Mr. Berry's claim was also compensated by the trust is I think that is what allows the support to understand that Ms. Berry's claim also falls within the claims that are actually covered by the manville trust and the channeling injunction that was by the manville confirmation order. And as a subsidiary of manville, and as a result of the fact that manville ownership of manville forest products, and the fact that manville products may have been an issue with respect to Mr. Berry's exposure, those same things would carry over to Ms. Berry because her exposure has been admittedly 100 percent derivative of Mr. Berry's exposure. So to the extent... Counselor Judge Newman, if you're right that the claim is channeled to the trust, do we have authority to accept your subsequent argument that it's there defeated, or is that a question to be decided in a controversy with the trust? I think the merits of Ms. Berry's claim would then have to be addressed by the trust. I think the fact is, as your honors have noted and as Judge Wellesley noted, that the fact is Ms. Berry had her trial, and at her trial 100 percent of her damages were ascertained by the court and the jury award there, and the judgment was divided 50 percent between the non-settling defendant and 50 percent to the jury. Which is your argument? If you want us to say she has no claim, then it sounds like there's no point in us channeling it to the trust. Conversely, if we do channel to the trust, it sounds like we ought not to decide whether she there has a claim. Your Honor, I just try to understand what... Are you saying yes, channel it to the trust, or are you saying no, don't channel it to the trust, decide here that she has no claim? Judge Newman, I think that both of those answers are correct on the facts of this case. Had we been at a different stage and had the trial not taken place, I think I would be arguing just that these things should be channeled to the trust. Possibly they're both correct, but it seems to me there's a sequence. If we accept your argument that we should channel it, then we should channel it and not decide the merits. If we accept your argument that she has no claim, wouldn't it follow that we ought not to waste anyone's time with channeling? Your Honor, I think it's important here because of the fact, as Ms. Berry's counsel has noted, that they may be considering bringing a claim on behalf of either the estate or others who may have a wrongful death claim, that it's clear that the decision is still right for decision, that the Manville channeling injunction and the confirmation order cover this type of claim. I'm just trying to understand what it is you want us to do, and I don't think at the moment we can do both. Maybe we can, but I'm trying to understand what you think we should do. Your Honor, I don't think that this court actually needs to direct that the claim actually go to the Manville Trust. Your basic position is we should rule she has no claim. That she has no claim or that to the extent that she's bringing claims against graphic tied to exposure that started in the 1970s and went on and is found to have been a substantial the substantial exposure that happened before 1980. And if we accept that argument, we don't read channeling. Is that correct? You don't need to reach channeling. Ms. Berry has not filed a claim against the trust, and it would be up to her to decide whether or not there's any claim that remains to be pursued against the trust. I believe on the facts here, the trial in Louisiana has determined 100 percent of the exposure and has allocated 100 percent of the non-settling defendants there so that there'd be nothing left for the for the trust. But that is something that could be addressed separately. I think the important piece for this court is the determination that, in fact, this type of asbestos exposure, which occurred prior to the petition date, was in fact addressed and properly addressed by the Manville. Well, go ahead and finish your thought. I apologize. No, Your Honor. Well, it's initial exposure. I mean, it's important to separate the idea of a concept of a claim from a cause of action, isn't it? Because the claim is an issue of federal law. The cause of action is an issue of state law. But federal law decides whether she has a claim against the trust or whether her claim arises at some later date, which would be post-petition. She seems to be arguing on the causation side, cause of action side, as opposed to the federal claim side. Then that's the argument you're making here, right? But let me see if I understand correctly. Your position is that because federal law generally seems to be, or a number of cases that have looked at this, have because it's impossible, well, that an exposure of mesothelioma claim with asbestos, the claim arises at the time of the initial exposure. That decides where in the bankruptcy world the claim arises. Is that it? That's exactly right, Your Honor. All right. And so that's principle number one. Then you make another argument, curiously, at the very end of your brief. I'm very curious to see. I'd love to know how that eventually came into your mind, but it interests me. This is an unusual case. She goes to trial in Louisiana, gets a 4.5 million verdict. She gets it reduced by 50% because Olin's settled and paid. They don't have to pay the FOMA, but Olin's identified as 50%. The judgment's reduced to 2.25 million, and Foster Wheeler pays it. So then the question is, has she now been paid for her mesothelioma claim? And that's your position, that she has no standing to litigate anything with regard to mesothelioma anymore. Is that it? Yes, Your Honor. We believe that that has been fully addressed by the Louisiana trial. That is correct. All right. Thank you. Thank you, Your Honors. Thank you. We'll hear from Ms. Ramsey, who has reserved some time. Thank you, Your Honors. I'd like to start with the proposition that we accept under federal bankruptcy law that Mrs. Berry had a claim in the bankruptcy. She did have a claim in the bankruptcy. She had pre-petition exposure. There's no question that the exposure that had occurred prior to the bankruptcy was a claim in the bankruptcy. She was what is now called a future claimant. She was an unmanifested claimant. Our argument is not that she didn't have a claim. Our argument is, with respect to that claim, that it was not discharged in the Forest Mansville bankruptcy because she didn't have adequate procedural due process. And there's no way that her claim was channeled in the Mansville bankruptcy because the Mansville bankruptcy was a distinct case that specifically excluded the claims of the Mansville Forest Products bankruptcy. More significantly, and this is the part I want to get to, bankruptcy jurisprudence and asbestos bankruptcy jurisprudence does not hold that an asbestos claim arises at the date exposure. That's inconsistent with both bankruptcy law and it's inconsistent with asbestos law. It's inconsistent with bankruptcy law because as a fundamental principle of bankruptcy law, only something that is a claim can be dealt with in a bankruptcy case. So to the extent that she has a claim based on the exposure to asbestos that occurred up to the bankruptcy, that is one claim. It could not have dealt with her claim, which arose after the bankruptcy case. Think of it this way. What if Mr. Berry, the day that there's no in Louisiana recognized, there's no way to parse out the portion of time that she's exposed to asbestos during the time that and then the other stone in the plant because mesothelioma is an aggregate disease. It's the result of multiple exposures. The fibers get into the lungs and aggravate the lungs and ultimately mesothelioma develops. So there's not, it's a cumulative disease. She can't separate the two, but state law may decide when the statute of limitations starts to run, but federal law decides when her claim arises, does it not? It does not. Well, it does, but federal law says your claim only your federal law says she had a claim in the bankruptcy. It doesn't say her claim arose then and she has no other claim. Think of it. Well, I'm not trying to argue with you, but isn't that why they had a channeling injunction? I mean, this was a new thing because they understood the 10 to 15 years into the future, people were going to be developing mesothelioma as a result of being exposed to manville products or working for manville. And, and, and so the claims may have arisen while they were working for manville, but they didn't get sick until 15, 20 years later. So the fact that a claim arises doesn't start the clock. It just identifies who you, who you, who you file your claim with, right? It's still only a claim up for pre-petition exposure. She has a right. She is not enjoined by anything, assuming that the bar date worked or there was injunction. She does not, any post bankruptcy claim she had is not enjoined by that. And the reason, if you look at it, the people that she sued in Louisiana, were they all people that, that exposed her to, to, uh, uh, asbestos after manville was gone from the plant? No, no, no. I don't know. Let's see. I'm trying to think if I might, if I understand your, your question, if I can use an illustration just to, I think it'll make it. My point is if Mr. Berry had stopped working at this mill the day after the bankruptcy concluded and began working in another mill and was exposed to asbestos there. Yeah. Mrs. Berry could bring an action. Yeah, I agree with you a hundred percent. All right. So there's no difference here because graphic took over a mill and graphic knew it was dangerous. It had a ongoing duty to protect Mr. Berry from exposure and it didn't. And she has a right to present her claim in state court. The state court may say the jury may say, you know what? We don't buy it. We think your exposure is because of exposure years ago, and we're not going to award anything against graphic, but the bankruptcy itself as a matter of bankruptcy law. And when the jury gave her $4.5 million, were they considering all the injuries that she received from all the tort fees, just both those there and those not there? I do not believe that they, they could have considered the claims against graphic because graphic wasn't there, but I, I am not trial counsel, but she can't parse out the portion, but she has a wrongful death action now. So let's just take the wrongful death action. And because you heard, it's not another day because the same issue is going to be presented there. And, and so the court is eventually a court is going to have to, to reach this issue of what the impact of the bankruptcy was. The standing determination would not preclude you from doing that. That's correct. A standing determination. But a loss on the bankruptcy issue would. A loss on the bankruptcy issue would. And so to your earlier question, are we talking about state or federal law? We're talking about federal law. Federal law has a clear delineation between what a bankruptcy court can enjoin and what it cannot enjoin. And it cannot enjoin future misconduct. It's not a get out of jail free card. And that is what graphic is trying to use the bankruptcy to do. It is trying to avoid responsibility for its own misconduct, which occurred years after the bankruptcy, for the sole reason that a predecessor entity had gone through a bankruptcy proceeding. And that is not our judicial system. It's about accountability. I'm also prepared. I know I'm over my time. And so I'll follow your direction. But I'm also prepared to address just very briefly the question of the discharge and the injunction if the court wants to hear from me. If not, I will stop. Thank you, Ms. Rankin. Thank you. Thank you. And we'll reserve decision and we'll turn to the second case.